*Per totam curiam.*

---

CHARLES BROWARD AND WILLIAM EUBANKS *vs.* MARIA DOGGETT, EXECUTRIX OF JOHN L. DOGGETT.

In an action of assumpsit where no damages are stated in the declaration, the defect is cured by verdict and judgment, especially when sufficient damages are stated in the writ.

Where, in an action by the executrix to recover for professional services rendered by her testator, as general attorney of an estate of which defendants were the representatives, after the testimony of several witnesses had been received, going to establish that plaintiff's testator had for several years acted at the instance of defendants as attorney of the estate, and placing estimates upon these services—it was testified by a witness for defendants, that the plaintiff had admitted that her testator was employed to collect money due to the estate represented by defendants on a considerable number of notes which were placed in his hands, and that one of the defendants agreed to give him ten per cent. on all moneys collected. Held, that it should have been left to the jury to determine whether such agreement did not embrace all the notes which plaintiff's testator had in his possession belonging to the estate; whether collected through means of suit or otherwise.

Where in such case the defendants gave in evidence two notes of the plaintiff's testator, given for negro hire, payable to defendants as executors of the estate for which the professional services were rendered, and there was a receipt endorsed on each of the notes, one of the receipts being in the hand writing of plaintiff's testator, the receipts created a presumption of payment on account of the professional services of the plaintiff's testator, rendered for the benefit of the estate of which the defendants are the representatives.

7

Charles Broward and Wm. Eubanks, *vs.* Maria Doggett, Executrix, &c.

The presumption is, that a debtor will pay his debt through an indebtedness of his creditor in preference to making a payment in cash.

Error to Duval Circuit Court.

This was an action of assumpsit by defendant in error, to recover of plaintiffs in error, for professional services alleged to have been rendered to them by John L. Doggett (the plaintiff's testator,) as an attorney at law. The declaration contained a count for work and labor, and two special counts (*indebitatus* and *quantum meruit*) for professional services by the said John L. Doggett, 'in prosecuting and defending divers causes, suits, and business for the defendants, executors of Stephen J. Eubanks, deceased, and for fees due, and of right payable to the said John L. Doggett, in respect thereof; and also for other work and labor, care, diligence and attendance of the said John L. Doggett in his lifetime, in and about the drawing, copying and engrossing of divers conveyances, deeds and writings for the said defendants at their special instance and request. And also for divers journeys and other attendances by the said John L. Doggett in his lifetime, before then made, performed and given in and about the said business and other business of the said defendants, and at their special instance and request.' The amount of damages laid in the declaration, was left in blank.

The defendants appeared and pleaded separately.

The defendant, Charles Broward, pleaded *non assumpsit*, and two special pleas. Issue was joined on the plea of *non assumpsit* and demurrers were filed to the special pleas. The demurrers were sustained, but as no error was assigned by the defendants on that account a further notice of these pleas is unnecessary. The defendant Eubanks also pleaded *non assumpsit* and issue was joined thereon.

The cause was tried at the November Term, 1847, Judge Macrae presiding.

On the trial the plaintiff in the Court below introduced Isaiah D. Hart as a witness, who testified, " That Judge Doggett was, as he supposed, general attorney for the defendants as executors of Stephen J. Eubanks, deceased. That he supposed so from the fact of having seen Mr. Broward and Judge Doggett frequently together in the Clerk's office, attending to the business of the estate. Knows of no other attorney employed by defendants. Doggett was Judge of the County Court, and defendants frequently had business with

Doggett at his office and at the Clerk's office. Broward was the active executor. Knows of Doggett being generally employed by defendants. Saw them frequently doing business in the Probate and Clerk's office. Does not recollect to have seen Mr. Eubanks the defendant, with Judge Doggett. Broward was the active executor, and seemed to attend to all the business. Saw Doggett frequently with him transacting the business of the estate, and saw him attending to defendants business in Court, and knew that they had no other attorney. Would conclude that they employed him as their attorney for the same reasons that I would conclude that they employed Mr. Fraser."

William Hickman, a witness for plaintiff, also testified and said that "he had frequently heard defendants speak of Doggett doing business for them. Of Doggett bringing suits for them. Eubanks died in 1837, he believes. Knows the defendants, and knew Doggett well."

Henry D. Holland testified that ' he hired some negroes of the estate. In dispute about the hire, Chares Broward referred witness to Judge Doggett as their lawyer. Doggett died in February 1844.'

Robert Robinson, also testified that he had hired some negroes from the defendants as executors of Eubanks. That there arose a controversy about the wages and defendants referred witness to Judge Doggett. This was in 1841.

Wm. F. Crabtree also testified as a witness and said that ' he had a claim against the estate of Eubanks and called on the executors to pay it —they said they had no money but referred witness to Doggett as their attorney and collector who might have made collections and would in that event pay him—this was seven or eight years ago. Witness also says he is Judge of Probates of Duval County and that from his knowledge of the estate and its amount and its transactions he should think these services worth $500 per annum in the same. Does not know precisely what service Doggett rendered. Heard defendants say Doggett was their general attorney. Doggett served about four years and until his death.'

Plaintiffs then read in evidence a receipt of defendants to plaintiff given under a schedule of notes or claims. Receipt as follows:—

[Schedule.] "Received, Jacksonville, February 22, 1844, from the hands of Maria Doggett, executrix of the estate of John L. Doggett

Charles Broward and Wm. Eubanks, *vs.* Maria Doggett, Executrix, &c.

deceased, the above papers and notes, which were given in the hands. of John L. Doggett attorney at law for collection, with the excep‑ tion of those marked not found.

WM. EUBANKS,     } *Executors.*

CHAS. BROWARD.   }

James W. Bryant, another witness, testified that Doggett conducted the business of defendants in Court, and was their general attor‑ ney; that he had a knowledge of the estate, and from his know‑ ledge of the estate and its business in Court and elsewhere, inclu‑ ding advice, &c., thinks Doggett's services worth at least three hun‑ dred dollars per annum; indeed, thinks his services, exclusive of matters in Court, were worth that sum; thinks Mr. Burritt would have charged $600; but Doggett's services were worth less, re‑ garding his business and professional capacities. The witness having examined the papers in five different cases in Duval Circuit Court, in which Doggett was attorney for the executors of Eu‑ banks, said that the fees for prosecuting four of these cases to judg‑ ment should be $20 each, and for the other case pending when Doggett died $10.

It was then proved that the letters testamentary granted to de‑ fendents were dated 13th April, 1847.

Phillip Frazer, a witness for defendants, was then sworn, and testified—that, as attorney of defendants, he had several interviews with the plaintiff in relation to the claim which she, as executrix of John L. Doggett, preferred against the defendants, as executors of Stephen J. Eubanks, deceased, for services alleged to have been rendered to them as attorney in the business of Eubanks' estate. That in those interviews she told the witness that Judge Doggett was employed to collect money due the estate on a considerable number of notes which were deposited in Judge Doggett's hands, and that said Broward agreed to give said Doggett ten per cent. on all moneys. collected, for his services—the plaintiff claimed four or five hundred dollars as her due. She claimed a sum sufficient to balance the judgment of defendants against her, and said that Judge Doggett had a great deal of trouble with the business of Eubanks' estate—that he had been the executors' attorney in all their business, and she thought enough was due him for his services to balance the said judgment—that witness, as defendants' attorney, offered to compro‑ mise by paying her one hundred and thirty-five dollars. Witness also stated that there were but four or five cases prosecuted to judg‑

ment in favor of defendants by said Doggett, as their attorney—that witness had been the attorney of defendants since Doggett's death, and was familiar with business of the estate of Eubanks—that he would have done all that was done by Doggett in the business of the estate, so far as he had been able to discover from the papers and business in Court, for one hundred and fifty dollars, and thinks that a high compensation.

James McRory sworn as a witness for defendants says. He knows the parties, has known Broward eight years. In January 1840 was at the hiring of slaves of Eubank's estate. Judge Doggett cried the hiring. Witness was clerk of the executors from January 1841, to the time of the division of the estate. Doggett was not the general attorney of the executors employed to manage the affairs of the whole estate. The executors consulted him also as Judge of the County Court relative to their duty. When he performed any extra services such as hiring the negroes, he was paid for it at the time. Broward was forward in transacting the business of the estate, and Eubanks concurred in his acts and undertakings as joint executor and witness considered that they acted jointly in the executorship.

Witness was Clerk generally. Doggett approved bonds as Judge of Probate. The executors were generally together when with Doggett, and held the estate indifferently between them. No other counsel was employed by them than Doggett up to the time of the latter's death. Knows of no advice given by Doggett as Judge of the County Court, except as to the bonds for hires. Witness was perfectly conversant with the business of the estate, and, if Judge Doggett had been employed or retained generally *in all business* of the estate, would have known it.

The defendants also offered in evidence two promissory notes made by Doggett jointly and severally, with Charles Merrick as his security payable to the executors of the estate of Stephen J. Eubanks, the first for the sum of $225, dated 1st January, 1840, and payable 1st January, 1841, and the other for $145, dated 4th January, 1841, and payable 1st January, 1842.

On the back of the first note was endorsement as follows:

"Received January 4th, 1841, ten dollars on account of the within note.          CHARLES BROWARD, Executor."

On the other note was endorsement as follows:

"Received on the within note seventy dollars.

April 2, 1842.     CHARLES BROWARD, Executor."

It was proved that the body of the last mentioned endorsement was in the handwriting of John L. Doggett. It was also admitted that the notes were given for negro hire by Doggett as principal and Merrick as security. Also that these notes had been sued and prosecuted to judgment against the Executrix of Doggett; that execution had been issued and property sold, but that said judgment was still unsatisfied as to a considerable balance.

It was further admitted that the account for professional services now sued on had been filed as a set off in the suit on these notes, but owing to the pleadings was not availed of but was in some way withdrawn and that counsel waived all objections on that account.

The testimony was here closed and the counsel for defendants asked the court to instruct the jury "that, as there was a special contract between John L. Doggett and the defendants respecting the subject matter of this suit, the plaintiff cannot resort to an implied one"—which instruction the Court refused and in substance charged the jury "that to the mind of the Court the evidence does not show an express contract, and that no express contract is proved except as to the rate of compensation to Doggett for collections, viz: ten per cent."

The defendants counsel then asked the Court to instruct the jury "that the endorsement upon the last mentioned note in the handwriting of Doggett is evidence of an account stated between the said Doggett and defendants at the date thereof." Which instruction the Court refused and in substance charged the jury "that the said notes and the said endorsements were not of themselves evidence of a settlement or account stated between the parties thereto as to all matters of account between them, but that the jury might consider them in connection with the other testimony, if any there was, tending to show that there had been such a settlement or account stated as that contended for. That it was most probable, so far as the Court was capable of judging of the evidence, that these notes were given and were to be accounted for, separately, with a view to a more precise and careful administration of the Estate, and to disconnect them from private individual transactions of the Executors with Doggett. That the jury need not consider the same, in making up their verdict, in any other point of view."

The defendants excepted to the opinions of the Court. The jury returned a verdict for the plaintiff for $500 10-100 and judgment was entered thereon on the 22d Nov., 1847.

Charles Broward and Wm. Eubanks, *vs.* Maria Doggett, Executrix, &c.

To reverse this judgment the defendants prosecute their writ of error in this Court and assign for errors that no damages are laid in the declaration and that the Court erred in refusing the instructions prayed and in giving the instructions given.

*Frazer,* for Plaintiff in Error :

I.—1st. No damages are laid in the declaration. The Court erred in entering up judgment on a verdict rendered upon so defective a declaration.

Where two declarations were sent up to the Supreme Court, in one of which a blank was left for damages, and it did not appear upon the record that leave had been granted to file a second declaration, it was held that the Court might presume that the cause was tried on the perfect declaration, and that leave had been given to file the second. 1 Wharton's Dig., 613, 614. Pedan *vs.* Hopkins, 13 Serg. & R., 45.

2nd. " In actions sounding merely in damages, it is an established rule that the plaintiff can recover no more than the amount laid in the declaration." 1 Wharton's Dig., 588. Gratz *vs.* Phillips, 5 Binney, 564. Ferry *vs.* Stone, 2 Dall. 184. S. C., 1 Yeates, 186. H. Blackstone's Rep., 643. Kennell's Forms, 11— (n. 1)—viz :

" A sum sufficient to cover the plaintiff's demand, with interest (if recoverable) to the time when it is likely that final judgment may be obtained, should be here · inserted, as he cannot recover greater damages in assumpsit than those laid in the declaration, and if judgment be entered for more, it is error." Chearly *vs.* Morris, 2 Blac. Rep. 1300.

" Though where the jury give greater damages, the objection may be got rid of, by entering a " *remittitur*" of the surplus *before judgment,* or the plaintiff may amend his declaration, and have a new trial, if the amount of the excess should render it advisable." 2nd Tidd, 896, 806, 652–'3.

3d. " The jury cannot give more damages than are laid in the *end* of the declaration." 1 Chitty's Pleading, 372. Fitz. Abr. tit. Damages, 7–13–16. Yelv., 45–70. Cro. Jac. 297. 1 Bulst., 49.

II.—1st. It is a rule that where there is an express contract, the plaintiffs' cannot resort to an implied one. 1 Chitty's Pleading, 372. 2 B. & P., 118. 3 Esp. Rep., 213. 1 N. R. 273. 2 Marsh,

273. And if there were no privity between the parties, independently of the special contract, the common counts would be of no avail. 3 Maule & Sel., 173. 3 Camp., 101. Chitty on Bills, 7th Ed., 364. 2 Phillips Ev. 108–9. Livingsdale *vs.* Livingston, 10 John. R., 37. Raymond, *et al. vs.* Bernard, 12 John. R., 274. Witt & Green *vs.* Ogden, 13 John. R., 56. Jennings *vs.* Campbell, Id., 94. 2d Starkie Ev., 78, 1 N. R., 104.

III.—1st. "A promissory note given to the plaintiff by the defendant is evidence of an account stated." 2d Starkie's Ev. 75.

2nd. "A promissory note is *prima facie* evidence of money lent by the payee to the maker, or of a balance due from the maker to the payee upon an account stated." 2d Starkie's Ev., 182. Storey *vs.* Atkins, 2 Str., 719. B. N. P., 136–7. Harris *vs.* Huntback, 1 Burr., 373.

3d. A receipt upon a bill is *prima facie* evidence of payment by the acceptor. 2d Starkie's Ev., 184. Peake's C., 26. Peake's L. E., 221. 2 Camp, 439.

*Long & Walker,* for Defendant in Error :

BALTZELL, Justice :

The Court below erred, we think, in the instructions given to the jury in this case. According to the admission of plaintiff, her testator was employed to collect money due the estate *"on a considerable number of notes"* which were deposited in his hands. Broward, one of the defendants, agreed to give the testator Doggett *"* ten per cent. on all money collected." Now, it is obvious that this agreement extended as well to the notes deposited as to the compensation, yet the Court instructed the jury "that there was no express contract proved, except as to the rate of compensation to Doggett for collections, to wit, ten per cent." It should, in our opinion, have been left to the jury, whether this agreement for ten per cent. did not embrace all the notes which Doggett had in his possession belonging to the estate, whether collected through means of suit or otherwise.

The second instruction is as to the effect of the notes and receipts. In reference to these, the Court say, "they were not of themselves evidence of a settlement or account stated between them, but the jury might consider them in connection with other testimony tending to show that there had been such settlement or account; that it was

most probable, so far as the Court was capable of judging of the evidence, that these notes were given to be accounted for separately, with a view to a more precise and careful administration of the estate, and to distinguish it from the private and individual transactions of the executors with Doggett, and that the jury need not consider it in any other point of view.

The effect of this would seem to be to destroy the weight of both the notes and the receipts. Now, we know no grounds upon which such a course may be justified. They were both in evidence and a part of defendants' case, who were entitled to the benefit of them as far as they tended to prove a fact, or conduce in any degree to their defence. It has been insisted here, that the notes were evidence of an account stated. Without enquiring into the correctness of this position in general, it is sufficient to say, that by the admission of the parties, they were given for the hire of negroes by Doggett, so that presumption as to the cause of their execution may not be indulged. The receipts present greater difficulty. They are evidence of an acknowledgement of payment of the sums specified, and have probably had this effect already in the case in which judgment has been rendered against the estate of Doggett. Whether a jury could infer that the receipts were evidence of payments on account of those services rendered by Doggett to the estate, for which payment is now claimed by his executrix, is of more difficult solution. The presumption is, that a debtor will pay his debt, through an indebtedness of his creditor, in preference to making a payment in cash. This is the usual and ordinary course of business, and we, therefore, incline to the opinion, that defendants were entitled to the benefit of this presumption, however slight, leaving it to be rebutted or explained by other testimony. In denying this weight to the receipt and notes, and in excluding them from the jury, as was virtually done by the instruction given, we think also the Court erred.

We do not think the objection to the want of damages at the conclusion of the declaration is available, after verdict and judgment, especially where there is sufficient in the writ, as in this case, to cure the defect.

The judgment will be reversed, and the verdict set aside, and the cause remanded for further proceedings, not inconsistent with this opinion.